IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FLOSPORTS, INC., | § | |
|     PLAINTIFF | § | |
| v. | § | CIVIL ACTION NO. 1:17-CV-01043-LY |
| | § | |
| WWN, INC., | § | |
|     DEFENDANT. | § | |

**PLAINTIFF FLOSPORTS, INC.'S AMENDED COMPLAINT**

Plaintiff FloSports, Inc. ("FloSports") hereby files this Amended Complaint and asserts the following claims against Defendant WWN, Inc. ("WWN").

**I. INTRODUCTION**

1. WWN induced FloSports to enter into a five-year Exclusive Media Agreement ("the Agreement") by misrepresenting the number of wrestling fans purchasing viewership access to WWN's events, and that representation and warranty was expressly incorporated into the parties' written contract. In fact, WWN contractually promised that "all data [it] provided . . . regarding financial performance of events [it] put on . . . was accurate, reliable and truthful."

2. FloSports paid hundreds of thousands of dollars in reliance on this promise. But WWN's viewership numbers were false. When pressed for the data that backed up WWN's representations, WWN originally claimed the data was lost or deleted. Ultimately, WWN sent records listing subscribers more than once and including customers who had not purchased broadcast services. Even accounting for that artificial inflation of its viewership, WWN's numbers proved far less than originally represented.

3. In reliance on WWN's representations, FloSports invested time and money that it will never recover in the market. Since viewership drives FloSports' subscription base and its

advertising revenue, WWN's breaches and fraud robbed FloSports of the benefit of its bargain and caused FloSports additional out-of-pocket damages.

4. FloSports files this Amended Complaint to amend its state court petition within 21 days of WWN's Motion to Dismiss, satisfying the deadline for amendment as a matter of course. *See* Fed. R. Civ. P. 15(a)(1)(B).

## II.  FACTUAL BACKGROUND

5. WWN hosts live wrestling events, charging consumers nationwide on pay-per-view and video-on-demand bases to view those events. WWN began communicating with FloSports regarding a potential live-streaming and advertising agreement in August 2016. Through such an arrangement, WWN could gain greater visibility, accessibility, and advertising of its events and products from FloSports—a sports media company that offers direct-to-consumer subscriptions of its live internet broadcasts—in addition to receiving a steady stream of cash payments from FloSports. During these conversations, WWN provided viewership data over the phone and by email to FloSports and then, on October 11, 2016, emailed FloSports a detailed spreadsheet misrepresenting the number of customers that had purchased its broadcast services.

6. The parties agreed to meet in Texas in October 2016 to negotiate the terms of the deal. During the negotiations, the parties discussed the viewership data expressly—and FloSports relied upon those numbers to determine whether to enter the Agreement and the amount it would offer to pay for WWN's media rights.

7. By the terms of the Agreement, FloSports would provide internet broadcasting and advertising services for WWN over a five-year period. Its terms specified that FloSports would produce at least one FloFilm series per year on the WWN, would provide substantial advertising value each year on FloSports, and that FloSports would pay fees for the exclusive right to stream

WWN's events. WWN was required to manage the events' video production and stream it to FloSports. In exchange for FloSports' fees and advertising spend, WWN warrantied that "all data provided by [WWN] regarding past financial performance of events put on by [WWN] was accurate, reliable and truthful."

8. During the first year of the Agreement's term, FloSports became suspicious that WWN's data was inaccurate. Over the course of several months, FloSports repeatedly asked WWN to send FloSports more detailed data to support the original spreadsheet. WWN failed to comply, alleging that the information was lost or deleted.

9. On August 18, 2017, WWN finally emailed the detailed viewership records, which contained additional misrepresentations: the records listed customers more than once and added purchasers of DVDs to the records, rather than limiting its numbers to the broadcast subscribers as it had promised were reflected in the original spreadsheet. Even with this fraudulent inflation of its data, the records showed viewership numbers far less than those reflected in the October 2016 spreadsheet, proving that WWN's original representations were false.

10. FloSports performed on the Agreement and spent hundreds of thousands of dollars pursuant to its terms, including on its advertising spend for WWN and in the fees paid directly to WWN—all in reliance on WWN's breached warranty and misrepresentations.

## IV.  PARTIES

11. Plaintiff FloSports is a Delaware corporation with its principal place of business located at 979 Springdale Road, Suite 120, Austin, Texas 78702.

12. Defendant WWN is a Florida corporation with a nationwide online and business presence. WWN has been served and appeared in this action. The Court has personal jurisdiction over WWN because it has purposefully engaged in business in Texas by negotiating

and executing a contract in Texas for a long-term business relationship with FloSports, a Texas resident. That contract expressly calls out Texas law to govern the relationship. WWN also purposefully availed itself of Texas's jurisdiction by committing an intentional tort by making fraudulent statements to FloSports in Texas, which induced FloSports to execute the parties' contract. The contract was intended to be, and has been, performed in Texas and the parties chose for Texas law to govern its terms. WWN's agents also physically traveled to Texas to negotiate and sign the contract and to conduct live events governed by the contract. WWN's Texas contacts give rise to, and are directly related to, the claims alleged in this action.[1]

## V. JURISDICTION

13.   WWN admits that the Court has subject matter jurisdiction over this suit because it is an action between two diverse parties with an amount in controversy greater than $75,000. *See* 28 U.S.C. § 1332. WWN also admits that venue is proper in this judicial district. *See* Clerk's Doc. 1 at ¶ 3, 4.

## V. CAUSES OF ACTION

### A.   Fraudulent Inducement and Fraud

14.   WWN misrepresented the number of customers purchasing broadcast services, specifically pay-per-view and video-on-demand access, to their fighting events. On September 1, 2016, WWN provided initial data regarding its program views. On October 11, 2016, WWN emailed a spreadsheet of false viewership data to FloSports. The more detailed viewership data that WWN emailed to FloSports in August 2017 was also false. Further, WWN made verbal misrepresentations to FloSports regarding its company data during the time period from

---

[1] FloSports incorporates by reference its response to WWN's Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, Motion to Dismiss for Failure to State a Claim, and the exhibits attached thereto.

September 2016 to August 2017, including false claims that the data was lost, deleted, or otherwise unavailable.

15.     WWN communicated this information intending that FloSports would rely on it, knowing that the information was false.  These misrepresentations and omissions were material.  A reasonable person would attach importance to and be induced to act on them.

16.     WWN intended that FloSports would enter into the Agreement, spend advertising funds promoting WWN, and pay WWN fees in reliance on WWN's representations, and FloSports did, indeed, reasonably and justifiably rely upon the representations and enter into the Agreement based on those representations.  Once the Agreement was executed, WWN also intended to, and did, misrepresent and conceal its actual viewership data, in an attempt to continue reaping the benefits of the Agreement (including but not limited to cash payments) for as long as possible, to the detriment of FloSports.

17.     FloSports suffered damages as a result of WWN's fraud.  Under the Agreement, it expended hundreds of thousands of dollars in media fees and advertising to promote WWN, funds that it would not have otherwise spent, all because it relied on WWN's misrepresentations.  FloSports also suffered other out-of-pocket expenses because of WWN's fraudulent statements.

### B.     Breach of Contract

18.     In October 2016, FloSports and WWN executed a valid contract, the Exclusive Media Event Agreement.  Among the promises WWN made in the Agreement was that "all data provided by [WWN] regarding past financial performance of events put on by [WWN] was accurate, reliable and truthful."

19.     WWN breached the Agreement by failing to adequately perform under its terms, including its provision of inaccurate, unreliable, and false viewership data to FloSports.

20. FloSports performed its obligations under the Agreement and presentment has been made.

21. FloSports suffered damages as a result of WWN's breaches. In addition to damages, FloSports is entitled to its costs, prejudgment interest and attorneys' fees.

## VI.  CONDITIONS PRECEDENT

22. All conditions precedent have been performed or have occurred.

## VII.  ATTORNEYS' FEES

23. Pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(8) and the terms of the Agreement, FloSports is entitled to recover the reasonable and necessary attorneys' fees and costs incurred in the prosecution of this action. FloSports has made proper presentment.

## VIII.  PRAYER

24. FloSports respectfully requests that the Court enter judgment for FloSports' actual damages, consequential damages, special damages including rescission, attorneys' fees, prejudgment and postjudgment interest, and costs. FloSports also asks for all other relief to which it may be entitled, in law or equity.

Respectfully submitted,

**RICHARDSON + BURGESS LLP**
221 West 6th Street, Suite 900
Austin, Texas  78701-3445
Telephone: (512) 482-8808
Facsimile: (512) 499-8886
Email: kburgess@richardsonburgess.com
Email: ssharp@richardsonburgess.com

Dated: November 27, 2017     By:  */s/ Karen C. Burgess*
Karen C. Burgess
State Bar No. 00796276
Stacy Rogers Sharp
State Bar No. 24052109

**ATTORNEYS FOR PLAINTIFF FLOSPORTS, INC.**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was served on the attorneys of record in accordance with the Federal Rules of Civil Procedure on this the 27th day of November, 2017, as follows:

Paul Schlaud
State Bar No. 24013469
Manasi Rodgers
State Bar No. 24090361
Reeves & Brightwell LLP
221 W 6th Street, Suite 1000
Austin, Texas 78701-3418
Telephone: (512) 334-4500
Facsimile: (512) 334-4492
Email: pschlaud@reevesbrightwell.com
Email: mrodgers@reevesbrightwell.com

*/s/ Karen C. Burgess*
Karen C. Burgess