IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FLOSPORTS, INC., | § | |
|    Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:17-cv-01043-LY |
| | § | |
| WWN, INC., | § | |
|    Defendant. | § | |

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

WWN, Inc. ("WWN") files this Motion to Dismiss Plaintiff FloSports, Inc.'s ("FloSports") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) because this Court lacks personal jurisdiction over WWN. In support of the Motion, WWN respectfully shows the Court as follows:

### INTRODUCTION

Plaintiff FloSports initiated this action against WWN, a Florida corporation, in Texas, and now attempts to manufacture a jurisdictional basis almost entirely out of its own contacts with Texas. FloSports' contacts with the State of Texas, however, are irrelevant to the jurisdictional inquiry. Setting them aside, FloSports cannot establish the requisite jurisdictional facts because WWN does not have sufficient contacts with the State of Texas. Accordingly, FloSports' amended complaint must be dismissed.

This case relates to an agreement between FloSports and WWN under which FloSports contracted to stream live wrestling events that were produced and promoted by WWN. FloSports, not WWN, initiated the parties' relationship, and the vast majority of WWN's relevant activities under the parties' contract occurred outside of the State of Texas. Indeed, the contract itself is silent as to the location of performance. More generally, WWN has only had

-1-

sporadic and minimal contacts with Texas, and those contacts do not rise to the level that would allow for the exercise of personal jurisdiction.

## FACTUAL BACKGROUND

WWN is a privately-owned Florida corporation with its principal place of business in Tampa, Florida.  *See* Declaration of Salem Hamaoui ¶ 3 ("Hamaoui Decl."), attached as Exhibit A.  WWN produces and coordinates live professional wrestling events and offers internet streaming and video on demand content of those events to the public.  *Id.* ¶ 4.  WWN primarily holds these events in Florida, but has also held events in other states, like Maryland, New York, Illinois, Georgia, and Massachusetts.  *Id.* ¶ 28.  Of the approximately 600 wrestling events WWN (and its predecessor company) has produced in the last thirteen years, only five were held in the State of Texas.[1]  *Id.*

WWN does not maintain an office or other address or facility in Texas.  *Id.* ¶ 6.  WWN is not a registered or licensed Texas business entity.  *Id.* ¶ 7.  WWN has not registered as a foreign corporation authorized to conduct business in Texas.  Hamaoui Decl. ¶ 8.  WWN has no designated agent for service of process in Texas.  *Id.* ¶ 9.  WWN has no employees or principals within Texas.  *Id.* ¶ 12.  WWN has no sales people, subcontractors, or other agents within Texas. *Id.* ¶ 13.  All of WWN's corporate and business records are located in Florida.  *Id.* ¶ 14.  All persons with relevant knowledge at WWN are located in Florida and Massachusetts.  *Id.* ¶ 15. WWN has no bank accounts in Texas.  Hamaoui Decl. ¶ 16.  WWN has no interest in, use of, or possession of real property within Texas.  *Id.* ¶ 17.  WWN does not own or lease any personal property in Texas.  *Id.* ¶ 18.  WWN is not required to pay any income or business taxes to Texas.

---

[1] FloSports incorporates by reference into its Amended Complaint its Response to WWN's Motion to Dismiss ("Resp.").  In that response, FloSports references additional Texas events reflected on WWN's website, *see* Resp. at 4, n.1—however, those events were not produced or hosted by WWN.  Hamaoui Decl. ¶ 30; *see also infra* p. 7, n.4.

*Id.* ¶ 19.  WWN has not used the Texas court system as a litigant other than being named as a Defendant in this action.  *Id.* ¶ 20.  WWN does not have contracts to insure any person, property, or risk located within Texas.  *Id.* ¶ 21.  WWN does not maintain any inventory in Texas.  Hamaoui Decl. ¶ 22.  WWN does not regularly do or solicit business in Texas.  *Id.* ¶ 23.

In 2016, FloSports contacted WWN and attempted to initiate a business relationship under which FloSports would acquire the right to broadcast WWN's live wrestling events.  *Id.* ¶ 24.  FloSports, not WWN, initiated the parties' business relationship.  *Id.*  The parties entered into discussions to form such a relationship, and in the course of those discussions, WWN provided data to FloSports concerning WWN's prior viewership numbers.  *Id.* ¶ 25.  That data was pulled from and compiled by a now-defunct third-party company named Fineline Hosting that was based in Florida.  *Id.* ¶ 34.  WWN sent that data in the form of a spreadsheet to FloSports from Florida.  Hamaoui Decl. ¶ 34.

In October 2016, WWN's President and CEO, Salem Hamaoui, traveled to San Antonio, Texas to scope out a potential live event space.  *Id.* ¶ 26.  During that trip, Mr. Hamaoui also met with FloSports executives in Austin, Texas and toured FloSports' office space.  *Id.*  The parties signed an Exclusive Media Event Agreement (the "Agreement") that day in Texas.  *Id.*  To Mr. Hamaoui's recollection, the parties did not discuss the viewership data during this meeting.  *Id.*  Mr. Hamaoui also traveled to Texas a second time in January 2017 to attend the live events in San Antonio, Texas.  *Id.*  These were Mr. Hamaoui's only visits to Texas during the relevant time frame.  Hamaoui Decl. ¶ 26.

The Agreement provided that FloSports would pay WWN for the exclusive right to broadcast, stream, and/or record WWN's wrestling events under the limited terms of that Agreement.  *Id.* ¶ 5.  FloSports mailed WWN's payments under the Agreement to a PO Box

address in Florida.  *Id.* ¶ 31.  No payments under the Agreement were received by WWN in Texas.  *Id.*

All of WWN's day-to-day operations are conducted in Florida, including the planning and coordination of all live events that are subject to the Agreement.  *Id.* ¶ 27.  WWN produced 53 events that were subject to the Agreement.  *Id.* ¶ 28.  Of these 53 events, 34 events took place in Florida.  *Id.*  Two of the 53 events took place in San Antonio, Texas, eight took place in New York, and small numbers took place in Maryland, Massachusetts, Michigan, Illinois, North Carolina, and Georgia.  Hamaoui Decl. ¶ 28.

WWN's marketing for the events subject to the Agreement consisted of handing out flyers at live events and social media posting on Facebook and Twitter and its website.  *Id.* ¶ 32.  No marketing was directed specifically at Texas residents on WWN's website or otherwise.  *Id.*  Upon information and belief, no flyers were handed out at the two Texas live events referenced above.  *Id.*  No social media/internet promotional content was posted from Texas.  *Id.*

WWN's material performance under the Agreement was not required to be done in Texas.  *Id.* ¶ 33.  The Agreement did not contemplate or specify that live events would necessarily take place in Texas or that Texas residents would be targeted customers under the Agreement.  *Id.*

FloSports filed suit against WWN in Travis County District Court, asserting claims against WWN for breach of contract and negligent misrepresentation.  (Dkt. No. 1, Original Petition ("Pet.")).  WWN thereafter removed the matter to federal court based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  (Dkt. No. 1, Notice of Removal).  After WWN filed a motion to dismiss the Original Petition for lack of jurisdiction and, in the

alternative, for failure to state a claim,[2] FloSports filed an Amended Complaint ("Compl."), alleging additional facts, dropping its negligent misrepresentation claim, and adding a claim for fraudulent inducement. (Dkt. No. 5).

## ARGUMENT & AUTHORITIES

**I.   THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER WWN.**

### A. Legal Standard

A court must dismiss an action when it lacks personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). The plaintiff, rather than the movant, has the burden of proof in establishing personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The plaintiff must produce sufficient evidence to support a prima facie case supporting jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). A federal district court may exercise personal jurisdiction over a non-resident defendant only if (1) the forum state's long-arm statute creates personal jurisdiction, and (2) the exercise of jurisdiction is consistent with due process. *Id.* "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Due process is satisfied where (1) the non-resident defendant purposely availed itself of the benefits and protections of Texas by establishing minimum contacts with the State of Texas; and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Id.*

---

[2] In its response, FloSports wrongly contends that WWN's original motion to dismiss was untimely and that WWN therefore waived its defenses because WWN's responsive pleading was due November 10, 2017, but WWN did not file its motion until November 13, 2017. Resp. at 5, n.3, 7. The Court was closed on November 10, 2017 for a federal holiday, Veteran's Day, which therefore made WWN's responsive pleading due on the next business day, November 13, 2017. *See* Fed. R. Civ. P. 6(a)(1)(C), 6(a)(6) (defining "Legal Holiday" to include "Veterans' Day"); *see also* United States District Court for the Western District of Texas 2017 Official Federal Holidays, available at: http://www.txwd.uscourts.gov/CourtInfo/SitePages/Holidays.aspx. Accordingly, WWN's original motion to dismiss was timely.

If a non-resident defendant's contacts satisfy due process, a court may exercise general or specific personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). A court may exercise specific jurisdiction over a non-resident defendant when the defendant's contacts with the forum state arise from, or are directly related to, the cause of action at issue. *Id.* at 414 n.8. General jurisdiction, on the other hand, is unrelated to plaintiff's cause of action and requires that the defendant have "continuous and systematic" contacts with the forum state. *Id.* at 415-16.

### B. Plaintiff cannot establish general jurisdiction over WWN.

FloSports cannot establish jurisdictional facts that would allow this Court to exercise general jurisdiction over WWN.[3] It is undisputed that WWN is a Florida corporation with its principal place of business in Florida. Compl. ¶ 12; Hamaoui Decl. ¶ 3. The Supreme Court has recently held that for a court to exercise general jurisdiction over a non-resident defendant, the defendant's affiliations with the state must be so "continuous and systematic as to render it essentially <u>at home</u> in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (emphasis added). The Fifth Circuit likewise has recently stated that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston*, 523 F.3d at 609 (internal citation and quotations omitted). An out-of-state defendant that merely does business with Texas businesses or customers "will not be subject to general jurisdiction if it does not have a lasting physical

---

[3] It appears from FloSports' response, that FloSports concedes that the Court does not have general jurisdiction over WWN. *See* Resp. at 6. Nonetheless, out of an abundance of caution, WWN addresses general jurisdiction here.

presence in the state." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 674 (S.D. Tex. 2014).

WWN cannot fairly be said to be "at home" in the State of Texas. It simply has no contacts with the State of Texas that would rise to the level required for the exercise of general personal jurisdiction. *Daimler AG*, 134 S. Ct. at 761; *Evergreen Media Holdings, LLC*, 68 F. Supp. 3d at 674. As such, this Court should conclude that it does not have general jurisdiction over WWN.[4]

### C. Plaintiff cannot establish specific jurisdiction over WWN.

FloSports similarly cannot demonstrate that specific jurisdiction over WWN would be proper. Specific jurisdiction is a claim-specific inquiry. *Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 894 (S.D. Tex. 2013). Accordingly, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Id.* (internal citations and quotations omitted). The Fifth Circuit applies the following three-step analysis to determine whether specific jurisdiction exists: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Monkton Ins. Servs., Ltd.*, 768 F.3d at 433.

---

[4] FloSports references "at least" seven live events that WWN produced in Texas in 2016, *see* Resp. at 4, n.1—however, only three of the events it cites were actual wrestling events produced by WWN; three of the others were produced by other companies, and one was a party to celebrate the end of the wrestling weekend. Hamaoui Decl. ¶¶ 29-30. Moreover, these events are irrelevant to the jurisdictional analysis: FloSports concedes that general jurisdiction does not exist, and in any event, such events could not support a finding that WWN is "at home" in Texas, which is required for a finding of general jurisdiction. The events also are not even arguably subject to the parties' Agreement or related to the parties' relationship, and they therefore also do not support a finding of specific jurisdiction.

The Supreme Court recently clarified the law regarding specific jurisdiction, narrowing the allowable exercise of jurisdiction, in *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014). The Supreme Court made clear that the jurisdictional inquiry must focus on the relationship among the defendant, the forum, and the litigation. *Id.* The defendant's relationship with the state "must arise out of the contacts that the defendant *himself* creates with the forum State." *Id.* at 1222 (internal quotations omitted) (emphasis in original). A court must look to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Id.* Specific jurisdiction may not be based upon the mere fortuity that the plaintiff is a Texas resident, and the plaintiff cannot serve as the only link between the defendant and the forum state. *Id.*; *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). There "must be a *substantial connection*" between the nonresident defendant's contacts with the forum state and the "operative facts of the litigation." *Clemons*, 928 F. Supp. 2d at 895, n.7 (emphasis added) (internal citation and quotations omitted).

The foregoing facts make clear that WWN's contacts are insufficient to support a finding of specific jurisdiction for either of FloSports' claims because they do not establish that WWN "purposely availed itself" of the privileges of conducting business in Texas, and because those claims are not sufficiently connected to WWN's Texas contacts if the fact that FloSports is a Texas resident is set aside (which it must be). Indeed, the vast majority of the jurisdictional facts alleged by FloSports—that FloSports received the purportedly incorrect data in Texas, that WWN entered into a business relationship (however lengthy) and contracted with a Texas company, that FloSports performed its duties in Texas, that WWN sent emails, text messages, and telephone calls to FloSports in Texas—relate to *FloSports'* ties to Texas, not WWN's. These plaintiff-focused facts are insufficient to establish jurisdiction under *Walden*. 134 S. Ct.

1115, 1122 ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."); *see also Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (Although defendant "surely could have foreseen that [the plaintiff] might perform many of its duties in Texas," this was not dispositive as the "hub of the parties' activities" was not in Texas).  Moreover, the Court's exercise of specific jurisdiction over WWN based on these few jurisdictional facts would not be fair and reasonable or comport with traditional notions of fair play and substantial justice.

> 1. FloSports cannot establish constitutionally sufficient contacts for specific jurisdiction over its breach of contract claim.

FloSports cannot meet its burden to establish that specific jurisdiction would be appropriate with respect to its breach of contract claim.  "It is well established that 'merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction.'"  *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (quoting *Holt Oil & Gas Corp.*, 801 F.2d at 1192-93).  Therefore, specific jurisdiction over FloSports' breach of contract claim cannot be predicated on the fact that WWN contracted with or entered into a business relationship with a company whose principal place of business is within Texas.  Similarly, the fact that FloSports performed some or all of its contractual duties in Texas is immaterial, given the Supreme Court's instruction that the *defendant's* contacts with the forum state be considered, not the plaintiff's.  *Walden*, 134 S. Ct. at 1122-23; *see also Moncrief Oil Int'l Inc.*, 481 F.3d at 312-13.  The exchange of communications in the development of a contract also is insufficient to be characterized as purposeful activity invoking the benefits and protections of the forum state's laws.  *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983).  "[T]he combination of executing a contract in the forum state and

engaging in communications with a resident of the state during the course of performance of the contract is likewise insufficient to establish the requisite minimum contacts necessary to support the exercise of jurisdiction over a nonresident defendant." *John Perrott Enters., Inc. v. Kerstein*, No. Civ. SA99CA887DWS, 2000 WL 33348247, at *4 (W.D. Tex. Jan. 5, 2000). Nor is WWN's transitory physical presence in Texas sufficient to establish specific jurisdiction. *See id.* at *4-5 (finding a single all-day visit to plaintiff in Texas in which defendant formally engaged plaintiff insufficient to support a finding of specific jurisdiction).

The fact that the Agreement contains a Texas choice-of-law clause also does not compel a finding of specific jurisdiction. While WWN may have agreed to the application of Texas law to any dispute, it *did not* agree to having such a dispute in Texas court, given that the contract does not contain a forum selection clause. In fact, the Fifth Circuit recently declined to find jurisdiction where a contract contained *both* a Texas choice-of-law clause and a forum selection clause because the forum selection clause only provided for jurisdiction in Texas state courts, not federal. *Hazim v. Schiel & Denver Book Publishers*, 647 Fed. Appx. 455, 458, n.6 (5th Cir. 2016); *see also Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012) ("[T]he presence of a choice-of-law clause is not sufficient in itself to establish personal jurisdiction when, as here, the contacts do not otherwise demonstrate that the defendant 'purposefully availed himself of the privilege of conducting business in Texas.'") (quoting *Stuart*, 772 F.2d at 1192).

Rather, FloSports must establish that WWN had a presence in Texas as a result of the Agreement and that the Agreement required performance in Texas. *See, e.g.*, *Hazim*, 647 Fed. Appx. at 459 (finding no specific jurisdiction despite contract being signed in Texas and containing both a Texas choice-of-law clause and forum selection clause because plaintiff did

not "allege that [defendant] had a presence in Texas as a result of its contract with him, or that any [of defendant's] personnel ever traveled to Texas because of the contract, or that the contract required performance in Texas.") (internal citations and quotations omitted); *Moncrief Oil Int'l Inc.*, 481 F.3d at 312 ("[A] plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas."). Indeed, where, as here, defendant's material performance under the contract occurs outside of Texas, specific jurisdiction is unlikely to exist. *Holt Oil & Gas Corp.*, 801 F.2d at 778; *see also Border Steel, Inc. v. Pac. Century Customs Serv., Inc.*, 500 F. Supp. 2d 655, 659 (W.D. Tex. 2006) (finding no specific jurisdiction where defendant's performance occurred in California).

WWN materially performed its obligations under the contract outside of Texas. Hamaoui Decl. ¶¶ 27, 33. Moreover, there is nothing in the Agreement that requires WWN to have a presence or to perform within Texas, or that contemplates that any contractual activity will take place in Texas—indeed, the Agreement is silent as to the location of performance. *Id.* WWN's day-to-day activities in coordinating and promoting live wrestling events all occurred in Florida. *Id.* ¶ 27. Likewise, over 60% of the live events that were subject to the Agreement were held in Florida, and over 95% of those live events were held outside of the State of Texas. *Id.* ¶ 28. WWN's marketing and promotion of live events similarly were not aimed at the Texas market or Texas residents. *Id.* ¶ 32.

WWN's contacts with Texas that relate to FloSports' breach of contract claim are simply not sufficient to allow the Court to find that specific jurisdiction exists. Indeed, courts have routinely held that nonresident defendants' contacts are constitutionally insufficient despite greater showings of contacts than FloSports has alleged here. *See, e.g.*, *Hazim*, 647 Fed. Appx.

at 458-59 (finding no specific jurisdiction where nonresident defendant had a sister division and mailing address in Houston, Texas, executed the contract in Texas, and contract contained a Texas choice-of-law clause and forum selection clause); *Hydrokinetics, Inc.*, 700 F.2d at 1028-29 (finding no personal jurisdiction where defendant had agreed to purchase goods to be manufactured in Texas, payment for those goods was to be made in Texas, extensive communications were exchanged between the parties before the written agreement was signed, officers of the defendant corporation traveled to Texas to close the deal, and the contract was formally created in Texas); *Stuart*, 772 F.2d at 1192-94 (finding no specific jurisdiction where nonresident defendant contracted with Texas residents, directed letters and phone calls to Texas, shipped prototypes and products to Texas, negotiated a contract with plaintiffs that anticipated the application of Texas law, and marketed his product in Texas).[5]  The Court should find that specific jurisdiction does not exist with respect to FloSports' breach of contract claim.

> 2. <u>FloSports cannot establish constitutionally sufficient contacts for specific jurisdiction over its fraud claim.</u>

Similarly, FloSports cannot establish specific jurisdiction for purposes of its fraudulent inducement/fraud claim.  FloSports' fraudulent inducement claim is based on alleged misrepresentations contained in a spreadsheet reflecting viewership numbers for WWN's live

---

[5] The cases on which FloSports relies generally involve significantly greater jurisdictional contacts than exist here and are therefore inapposite.  For example, in *Solio Security, Inc. v. Cummins Eng'g Consultants, Inc.*, No. A-12-CA-722-SS, 2012 WL 1307556, at *3 (W.D. Tex. Oct. 2, 2012) (slip copy), in finding that jurisdiction existed, the Court relied in large part on the fact that the parties' contract involved wide reaching contacts with the forum state and contemplated future involvement in the state— indeed, such future activity within Texas was required under the parties' contract.  The same is not true here, where the Agreement does not contemplate any future consequences or work within Texas.  Hamaoui Decl. ¶ 33.  Similarly, in *Southwind Capital Partners, LLC v. Burkman*, No. 1-15-CV-646 RP, 2016 WL 8258899, at * (W.D. Tex. Mar. 28, 2016) (slip copy), the Court focused on a number of defendants' jurisdictional ties to Texas, including that defendants had reached out to plaintiff to initiate a business relationship and that the plaintiff and defendants were joint partners in at least fifteen joint consulting agreements that involved over 25 Texas clients, among other Texas contacts.  Again, this case is distinguishable given that WWN does not have long-standing ties to Texas, and it was FloSports, not WWN, that initiated the parties' business relationship.  Hamaoui Decl. ¶ 24.

events.  Compl. ¶¶ 14-17.  Even taking as true FloSports' allegation that the spreadsheet contained inaccurate information (which WWN disputes), the spreadsheet was neither created in nor sent from Texas.  Hamaoui Decl. ¶ 34.  WWN utilized a Florida company called Fineline Hosting to compile the data contained in the spreadsheet.  *Id.*  That work was performed in Florida.  *Id.*  WWN then sent FloSports the spreadsheet from Florida. [6]  *Id.*

Moreover, there is no evidence that WWN expressly aimed its allegedly tortious activities at Texas, such that the exercise of specific jurisdiction would be appropriate.  The fact that FloSports maintains its principal place of business in Texas and therefore may have received the spreadsheet in Texas is irrelevant to the analysis and exactly the type of plaintiff-focused inquiry that the United States Supreme Court rejected in *Walden*.  134 S. Ct. at 1125.  In *Walden*, the Supreme Court made clear that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Id.*  The Fifth Circuit also has held that the fact that the plaintiff's principal place of business is in Texas is not sufficient to find that allegedly tortious activities are expressly aimed at Texas or that a defendant should anticipate being haled into a Texas court to answer for its conduct—that fact is a "mere fortuity."  *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772-73 (5th Cir. 1988); *see also Crossroads Fin., LLC v. A.D.I.M. Global Co. Ltd.*, No. 05-16-00486-CV, 2016 WL 7220970, at *6 (Tex. App.—Dallas Dec. 13, 2016) ("We have rejected the argument that 'directing a tort' at the forum state—such as Crossroads making misrepresentations to ADIM when ADIM was in Texas—is a basis for specific personal jurisdiction").  FloSports cannot establish that specific jurisdiction exists over WWN as to its fraud claim.

---

[6] FloSports has alleged that the viewership data was discussed at a meeting in Texas.  Compl. ¶ 6.  WWN disputes that allegation.  Hamaoui Decl. ¶ 26.  Even taking it as true, however, there is not a substantial connection that would support an exercise of specific jurisdiction.

-13-

### D. Exercising personal jurisdiction over WWN would violate traditional notions of fair play and substantial justice.

Finally, even if FloSports could allege facts sufficient to establish general or specific jurisdiction over WWN, personal jurisdiction nonetheless would be improper because it would "offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (internal citation and quotations omitted). The Fifth Circuit considers five factors in evaluating whether the exercise of personal jurisdiction is unreasonable: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the efficient administration of justice; and (5) the shared interests of the several states in furthering fundamental social policies. *Evergreen Media Holdings, LLC*, 68 F. Supp. 3d at 676. Application of these factors confirms that allowing FloSports to maintain this litigation in Texas would be unreasonable and offend traditional notions of fair play and substantial justice.

First, it would significantly burden WWN to litigate this matter in Texas. Hamaoui Decl. ¶ 36. All of the relevant people with potential knowledge at WWN are located in Florida or Massachusetts. *Id.* ¶ 15. WWN's principal place of business and its books and records are all maintained in Florida. *Id.* ¶¶ 3, 14. Second, Texas has little to no interest in this litigation. None of the acts allegedly committed by WWN were alleged to have occurred in Texas. Indeed, the only basis for having this lawsuit in Texas appears to be that Plaintiff FloSports is located here. That is not sufficient to implicate Texas' interests. Third, it is not necessary for suit to be maintained in Texas in order for FloSports to obtain relief. Fourth, Texas is not the most efficient forum given that all of WWN's potential witnesses and evidence are found outside of Texas. Fifth and finally, this lawsuit does not implicate any fundamental social policies. In light

of these factors, the Court should find that exercising jurisdiction over WWN would be unreasonable and offend traditional notions of fair play and substantial justice.

## CONCLUSION & PRAYER

For the foregoing reasons, Defendant WWN, Inc. prays that this Court dismiss the claims asserted in FloSports, Inc.'s Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). WWN further prays for such other and further relief to which it may be justly entitled, at law or in equity.

Respectfully submitted,

**REEVES & BRIGHTWELL LLP**

*/s/ Manasi Rodgers*
Paul Schlaud
State Bar No. 24013469
Manasi Rodgers
State Bar No. 24090361
221 W. 6th Street, Suite 1000
Austin, Texas 78701
pschlaud@reevesbrightwell.com
mrodgers@reevesbrightwell.com
(512) 334-4500 (Phone)
(512) 334-4492 (Fax)

**ATTORNEYS FOR DEFENDANT WWN INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of December 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

>Karen Burgess
>Richardson + Burgess LLP
>221 West 6th St., Suite 900
>Austin, TX 78701-3445
>kburgess@richardsonburgess.com

>*/s/ Manasi Rodgers*
>Manasi Rodgers