# EXCLUSIVE MEDIA EVENT AGREEMENT

This Rights Agreement (***"Agreement"***) is entered into as of October 21st, 2016 (***"Effective Date"***), by and between **FloSports, Inc.**, a Corporation based in Texas with its principal place of business at 2922 East Cesar Chavez, Austin, Texas (***"FloSports"***), and WWN, Inc a Corporation based in Delaware with its principal place of business at 7383 Monterey Blvd, Tampa, Florida (***"Event Rights Holder"***).

WHEREAS, the Event Rights Holder owns and produces professional wrestling events under a variety of promotion names, including, but not limited to, Evolve, Shine, FIP and Style Battle ("Events") and solely controls the rights to film, broadcast, stream and/or otherwise record the Event;

WHEREAS, FloSports is a media company that films, streams or broadcasts and/or otherwise records athletic events including without limitation for use in connection with its products and services located on FloSports platform (***"Media Platform"***), and

WHEREAS, the parties desire for FloSports to be the media company covering Events with exclusive rights to broadcast, stream and/or otherwise record the Event.

NOW THEREFORE, in consideration of the promises and covenants hereinafter set forth and for other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. **DEFINITIONS.**

    a) ***"Events"*** means the events owned and produced by all promotions affiliated with WWN, including but not limited to Evolve, Shine, FIP and Style Battle or any event hosted by Event Rights Holder that is substantially similar or serves as a replacement for such event whether or not similarly named. This agreement also covers any future promotions established by WWN during the Term.

    b) ***"Recordings"*** means any competition video, interview video, or other video captured at the location of the Event.

2. **TERM.** The term of this Agreement commences on November 1, 2016 and ends on December 31, 2021 (***"Term"***).



EXHIBIT

D



4. **OPTION PERIOD.** FloSports has the right to terminate this Agreement by providing notice during the month of January each year, starting in 2018. If FloSports exercises this option, the agreement will continue for 12 months after the date of notification before terminating.

5. **PRODUCTION.** Event Rights Holder will produce the video for each of the Events complete with a HD quality stream and commentary with similar quality. Event Rights Holder will manage the video production at no cost to FloSports including:

   a) Planning, Logistics & Production Teams.

   b) All required video equipment including:
      i) Minimum of two camera angles to be used.
      ii) Encoder to deliver live stream to FloSports.

   c) Personnel to manage and run the video production for all Events.

   d) Internet with a minimum upload speed of 5mbps for all Events.

e) Delivery of fully produced live stream via RTMP feed to FloSports for all Events. FloSports to provide RTMP instructions.

f) Event Rights Holder will produce and deliver a minimum of five Events per month, with the exception of December of 2016, where they will produce at least three Events. The quality of the Events should be reasonably similar or better than the same Events in 2015 and 2016 through the Term of the contract.

[redacted]

7. **EVENT PROMOTION.** The Event Rights Holder shall use the following methods to promote the FloSports live production of the Event.

   a) Prominent link of the live stream recording with an image above the fold on the homepage and Event page of the Event Rights Holder's website. FloSports will provide the image and link to be used.

   b) Minimum of two (2) email blasts with with an image and link to live coverage sent to Event Rights Holder's full database. FloSports will provide the images link to be used.

   c) Minimum of four (4) posts that include an image and link of the live stream recording on each of the Event Rights Holder's social media platforms, including Facebook, Twitter and Instagram. FloSports will provide the images link to be used.

   d) PA announcements every hour promoting live stream and Media Platform information. FloSports will provide the copy to be used.

   e) Onsite signage at each live event promoting live stream. Signage to be provided by FloSports.

   f) Opportunity to have an onsite display space at all WWN events. Display activation to be provided and manned by FloSports.

8. **EXCLUSIVE MARKETING RIGHTS.** Event Rights Holder hereby grants to FloSports the worldwide, exclusive rights and license to sell, broadcast, distribute, video and/or other Recordings of each of the Events and interviews and other coverage related to such Events, both live and VOD, with the exception of Blu-Ray copies of the Events, which may be distributed no earlier than three months after the Event's completion by Event Rights Holder. Additionally, Event Rights Holder grants to FloSports the worldwide, exclusive rights and license to sell broadcast, distribute, video and/or other Recordings of all past pay-per-views from their promotions, as well as any other matches available in their tape library. FloSports rights and license will be exclusive for the life of the term. After the term, FloSports retains the rights on a non-exclusive basis for use on

FloSports platforms. Event Rights Holder must provide permission for footage of the Events to be licensed or sold to a third-party.

9. **LICENSE TO RECORDINGS.** FloSports will make available any reasonable request by Event Rights Holder for use of certain Recordings or portions thereof for Event Rights Holder's internal use and for the promotion and advertisement of the Event.

10. **REPRESENTATIONS AND WARRANTIES**. Event Rights Holder represents and warrants that:

    a) it has the right, power, and authority to grant the licenses and rights set forth herein and to execute, deliver, and perform this Agreement, that this Agreement is binding on and enforceable against the Event Rights Holder in accordance with its terms, and that compliance by Event Rights Holder with its obligations hereunder shall not conflict with or result in a breach of any agreement to which Event Rights Holder is a party or is otherwise bound;

    b) the exercise by FloSports of the rights and permissions granted hereunder including without limitation the appearance of the Participants in the Recordings, the use of the Marks as set forth herein and use, broadcast and distribution of the Recordings by FloSports, will not violate or infringe upon the copyright, trademark, patent, personality, publicity, privacy or other proprietary rights of any third party.

    c) all data provided by Event Rights Holder regarding past financial performance of events put on by Event Rights Holder was accurate, reliable and truthful.

11. **RIGHT OF FIRST REFUSAL.** During the term of this Agreement and for a period of one (1) year after any termination or expiration of this Agreement ("ROFR Term"), upon receiving any bona fide offer from a third party to provide services after such termination or expiration similar to the services provided under this Agreement in connection with the Event, Event Rights Holder must provide FloSports with prompt written notice of the terms and conditions of the proposed offer, including without limitation the fees and consideration to be paid, any license or ownership terms, and the identity of the proposed third party provider. FloSports shall be granted a period of sixty (60) days following the later to occur of (i) receipt of such notice, or (ii) the termination or expiration of this Agreement, to match, or offer similar or equivalent terms to, the material terms in the offer ("Right of First Refusal"). If FloSports does not agree to the material terms in, or offer similar or equivalent terms to the material terms of, the offer, then upon expiration of the sixty (60)-day period, Event Rights Holder shall be free to negotiate with that third party, and to conclude such services agreement, on the terms tendered to FloSports.

12. **MISCELLANEOUS**

a) <u>FloFilm.</u> Flosports will produce at least one FloFilm series per year on the WWN. Theme of programming to be mutually determined. Event Rights Holder agrees to provide necessary video rights and athlete access.

b) <u>Relationship of the Parties</u>. The relationship between the parties is that of independent contractors. The relationship between the parties shall not under any circumstance be deemed to be a joint venture, employment or relationship of confidence or trust or a fiduciary relationship.

c) <u>Amendment</u>. No waiver, amendment or other modification of any provision of this Agreement shall be effective unless in writing and signed by both parties.

d) <u>Severability</u>. In the event a provision contained herein is held to be unlawful or unenforceable, such provision shall be severable from the remaining provisions of this Agreement, which shall remain in full force and effect.

e) <u>Successors and Assignees</u>. This Agreement may be assigned by either party without the consent of the other party and shall be binding on each party's respective successors and assigns; <u>provided</u>, <u>however</u>, that any assignee of Event Rights Holder must hold the same rights, title and interest as Event Rights Holder in and to the Event, as reasonably determined by FloSports. A transfer of the Event by Event Rights Holder to another party shall not relieve Event Rights Holder of its obligations under this Agreement.

f) <u>Governing Law</u>. This Agreement shall be governed by, and interpreted and enforced in accordance with, the laws of the State of Texas, without regard to conflicts of law principles that would require the application of any other law, and regardless of where the parties hereto may now or hereafter reside, be organized or do business.

g) <u>Entire Agreement</u>. This Agreement (including all the schedules and exhibits hereto) contains the terms of the entire agreement among the parties with respect to the subject matter hereof and supersedes any and all prior agreements, commitments, understandings, discussions, negotiations or arrangements of any nature relating thereto (including, but not limited to, any email communications between the parties).

h) <u>Mutual Indemnity</u>. Each party (as "Indemnitor") shall defend, indemnify and hold the other party (as "Indemnitee") and its officers, directors, agents, representatives employees and contractors, harmless from and against any and all losses, liabilities, costs, expenses (including attorneys' fees), damages, claims, actions and proceedings arising out of or related to (a) intentionally wrongful or negligent acts and omissions of the Indemnitor and its employees or contractors to the extent they result in bodily injury or property damage; and/or (b) breach of any of the representations and/or warranties set forth in Section 8. The Indemnitee shall (i) promptly notify the Indemnitor of a claim for which an indemnity is sought; (ii) give sole control to the Indemnitor of the defense and settlement thereof, provided that the Indemnitor shall

not settle such action without the consent of the Indemnitee which shall not be unreasonably withheld and the indemnitee may participate in such action with counsel of its own choosing at its own expense; and (iii) reasonably cooperate in the defense of such action at the Indemnitor's cost.

i) <u>Confidentiality of Agreement.</u> The parties agree that the terms and conditions of the Agreement shall be treated as confidential and therefore agree to undertake whatever measures are reasonably necessary to preserve such confidentiality unless disclosure is required by law or written consent of the other party is obtained. Notwithstanding the foregoing, each of the parties may disclose the terms and conditions of this Agreement to such party's attorneys, accountants and other agents in the ordinary course of business, in each instance subject to appropriate confidentiality agreements.

IN WITNESS WHEREOF, each of the parties has executed this Agreement as of the Effective Date.

_____  10/21/16      _____  10/21/16
Martin Floreani    Date:              Sal Hamaoui    Date:

CEO, FloSports, Inc.                  President, WWN, Inc.